THE PEOPLE OF THE STATE OF NEW YORK EX REL. BERNARD CONNOLLY v. THE BOARD OF POLICE COMMISSIONERS.

*Board of police commissioners of New York — power of, to try policemen for offenses committed by them when off duty.*

It is the duty of the board of police commissioners of New York to take notice of the conduct of the members of the police force, as well when off, as when on duty, and to dismiss an officer who is guilty of criminal or immoral conduct when off duty as an unfit person to be a member of the force.

The relator, while off duty and in citizen's clothes, seeing a girl standing on the stoop of the house of the Sisters of Mercy in New York, enticed her to go with him to a house of assignation for an improper purpose, the girl knowing the purpose with which she was taken there and assenting thereto. *Held*, that the conduct of the relator was such as to justify the board in dismissing him from the force.

CERTIORARI to review the proceedings on the trial of the relator, and his dismissal from the police force.

*Wm. F. Howe*, for the relator.

*Chas. F. McLean*, for the respondents.

404    PEOPLE ex rel. CONNOLLY v. POLICE COMRS.

First Department, July Term, 1877.

Davis, P. J. :

The relator was a patrolman of the municipal police. On the 13th of April, 1876, charges and specifications were made and filed against him, and on that day he was served with a copy of the charge and specifications, and notice of the place and time appointed for trial thereunder, which was the seventeenth day of April, at two P. M., and he admitted service of the paper. The charge and specification were as follows :

"*April* 13, 1876.

" *To the Board of Police of the Police Department of the City of New York :*

" I hereby charge patrolman Bernard Connelly, of the ninth precinct, with improper conduct March 17, 1875.   Specifications :

"In this, to wit: Said Bernard Connelly enticed Mabel Avery from the stoop of the Sisters of Mercy, No. 33 East Houston street, to a house of assignation at No. 10 Bleecker street, under the pretense of procuring for her a situation, and was arrested on the above complaint, and taken to the First District Police Court before Justice Flammer, at three P. M., April 8, 1876."

This was followed by a list of witnesses, six in number.

The relator appeared at the time and place therein specified, and it was proved, in substance, that on the eighth day of April, the relator saw and accosted the girl named Mabel Avery on the stoop of the house of the Sisters of Charity mentioned in the specifications, and asked her if she was a Catholic. On her telling him she was not, he told her she could not go in there as she was not a Catholic, and said he would take her to a place, and she could be there for two or three days. The girl testified that she did not understand that he was taking her to a place where she could work for an honest living, but that she understood precisely where she was to go, and that she was going for no good. He took her to a house No. 10 Bleecker street, where they both entered. This was an assignation-house, or house of ill-fame. Another officer, who was informed of what had been done, followed the relator and the girl into the house. It appeared they had gone up stairs, and, according to the relator's own statement, were going into a room, when they were called down at the request of the officer who followed them in; and as soon as

the relator saw the officer, he turned and fled up two pair of stairs, and locked himself in a room. The officer arrested him and the girl and took them before a magistrate, but he was discharged.

At the time of doing this the relator was off duty, and was in citizen's clothes. The evidence was quite sufficient to justify the conclusion of the board, that the relator took the girl from the stoop of the house of the Sisters of Charity to the assignation-house named for improper purposes ; and the only question in the case seems to be whether the board were justified in his conviction and dismissal upon such a state of facts. It is urged that his not being at that time in uniform and on actual duty, his conduct could not be made a ground for removal. We cannot assent to any such proposition. We think it is within the power and is the duty of the board of police to take notice of the conduct of the members of the police force as well when off as when on duty, and to dismiss an officer who is guilty of criminal or immoral conduct when off duty as an unfit person to be a member of the force. Their jurisdiction is not limited to acts committed by policemen while on actual duty ; and we think it is no answer or defense that the offense charged was committed out of uniform, and while the accused was not in the actual discharge of official duty. Under such a rule, the force might be made up of drunkards who were careful to keep sober in uniform ; or criminals or public brawlers with sufficient caution to avoid committing thefts or acts of violence while on actual duty.

The relator's conduct, if he were guilty, as the evidence tended to show, in persuading a girl, who was about entering the house of the Sisters of Charity, to go with him, under promise of finding her a place, to a house of assignation for immoral purposes, was such as required the condemnation of the court ; and even if the girl were entirely willing to accompany him, and understood perfectly well the character of the house, and the purpose for which they were going, the board were equally justified in dismissing him from the force.

The action of the board should be affirmed and the writ quashed, with costs.

BRADY and DANIELS, JJ., concurred.

Proceedings affirmed ; writ quashed, with costs.